UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

TERESA A. RATLEDGE,

        Plaintiff,

v.                       Civil Action No. 1:10-cv-239

SCIENCE APPLICATIONS
INTERNATIONAL CORPORATION,

        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Science Applications International Corporation's Motion for Summary Judgment. Plaintiff filed suit against Defendant alleging violations of her rights under the Americans with Disabilities Act of 1990, the Civil Rights Act of 1991, and under related common law claims.[1]

Plaintiff suffers from a sleep disorder that causes her excessive daytime sleepiness and results in her momentarily

---

[1] Count III of Plaintiff's Amended Complaint alleged violations of Chapter 11 of the Human Rights Ordinance of the Code of the County of Fairfax, Virginia, but Plaintiff has subsequently withdrawn such count.

1

falling asleep during the workday, and takes the prescription medication Adderall to prevent excessive sleepiness. She has also been treated for severe migraine headaches, and has taken prescription medications to relieve her migraine headaches as well.

Plaintiff began working at GH Engineering, Inc. on January 30, 2007 and was a Senior Principal Engineer assigned to work on a government subcontract held by Defendant Science Applications International Corporation (SAIC) at the Central Intelligence Agency (the Agency). While Plaintiff worked at the Agency, GH Engineering paid her for the work that she performed, withheld taxes from her paycheck, awarded her a raise, and gave her time off for vacation that accrued under a GH Engineering vacation schedule. An Agency project manager gave Plaintiff her work assignments directly. Plaintiff received most of her direction from two Agency employees. Plaintiff performed her work at the Agency site with tools the Agency provided. Plaintiff gave regular status reports of her work to the Agency, and she submitted monthly progress reports to SAIC. SAIC had authority to hire and fire personnel working on the government subcontract.

During Plaintiff's term at the Agency, she fell asleep occasionally during meetings. She asked certain coworkers to

tap her on the shoulder to rouse her in the event that she fell asleep.

On February 5, 2008, Plaintiff brought a King Cake to work for her colleagues to share in celebration of Mardi Gras. Later that day, Plaintiff sent an e-mail message to several colleagues with the subject line "King Cake Info", in which she gave a description of the historical significance and tradition of the King Cake in relation to Mardi Gras. One coworker sent Plaintiff a response stating that Plaintiff's e-mail was inappropriate and did not belong in the workplace on a government computer system.

On February 13, 2008, Lori Ann D.[2], an Agency employee, sent an e-mail to Lisa Roger, an SAIC Program Manager, notifying her that she had received several complaints about Plaintiff sleeping in meetings with customers. Lori Ann D. and Ms. Roger also met to discuss the King Cake e-mail and friction between Plaintiff and a customer representative.

On February 15, 2008, Lori Ann D. sent Ms. Roger another e-mail with concerns about Plaintiff.

On February 27, 2008, SAIC sent a letter to GH Engineering to convey SAIC's request for removal of Plaintiff from the Agency project. SAIC cited Plaintiff's use of a government

---

[2] Last names were not used because of Agency employment.

computer to send e-mail for unofficial personal use and three instances of Plaintiff falling asleep during Agency meetings as the rationale.

On February 29, 2008, Plaintiff was told that Defendant had removed her from the Agency's project. She was permitted to work until the end of the day to close out her tasks and pack up her belongings.

On March 3, 2008, SAIC employees executed a Form 4311 requesting that Plaintiff's clearance to work on the Agency's contract be terminated and that her access badge to the Agency worksite be destroyed. The badge office inactivated Plaintiff's access badge on the morning of March 3, 2008. SAIC employee Mario Orsini spoke with the badge office and confirmed that her badge was inactive as to the contract on which she had worked.

Plaintiff returned to the Agency's work site on March 4, 2008, to report for another work assignment on a different project in which GH Engineering was the prime contractor. When she attempted to gain access to the facility, she discovered that her Agency-issued identification badge had been deactivated. One or two days later, GH Engineering reactivated Plaintiff's access badge.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The inferences drawn from the underlying facts must be construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Nevertheless, Rule 56 mandates that summary judgment be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Plaintiff seeks recovery under the Americans with Disabilities Act (ADA) and Title I of the Civil Rights Act of 1991 (Title I) alleging that SAIC was an employer or joint employer of Plaintiff according to the language in both statutes.

The ADA protects applicants for employment and employees from discrimination based on disability. 42 U.S.C. § 12112(b) (2006 & Supp. 2010). The act defines an employee as "an individual employed by an employer." Id. § 12111(4). The ADA does not protect independent contractors from discrimination based upon disability. See, e.g., Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 642 (7th Cir. 2004) (finding that independent contractors do not have standing to sue under the ADA because the statute only covers employees); Lerohl v.

Friends of Minn. Sinfonia, 322 F.3d 486, 489 (8th Cir. 2003) (affirming the district court's determination that the ADA did not apply to terminated musicians because they were independent contractors).

Title I of the Civil Rights Act of 1991 expands the type of remedies available to an individual who has an existing cause of action under the ADA. 42 U.S.C. § 1981a. Like the ADA, the Civil Rights Act of 1964 defines an employee as "an individual employed by an employer", id. § 2000e(f), and only applies to employees and not to independent contractors. Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 313 (4th Cir. 2001). Plaintiff must be an employee of SAIC to recover under the ADA and Title I.

Plaintiff contends that she was a de facto employee of SAIC because of the degree of control that SAIC exercised over her. When a statute uses the term "employee" without defining it, the courts presume that Congress intended an agency law definition of the conventional master-servant relationship unless otherwise indicated. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992). In applying the law of agency, the Supreme Court has enumerated a non-exhaustive list of factors that courts should consider when determining an individual's employment status. The initial inquiry examines the degree of control

exercised over the manner and means of the individual's production. Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989). Other factors to consider include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 751-52. No one factor is determinative. Id. at 752. The Fourth Circuit has also placed weight on the financial relationship between the parties and the beliefs that the parties held about the nature of their employment relationship. Farlow, 259 F.3d at 315-16.

In Community for Creative Non-Violence v. Reid, the Supreme Court first examined the hiring party's right to control "the manner and means by which the product is accomplished." 490 U.S. at 751; accord Farlow, 259 F.3d at 313. The degree of control pertains to the control over the professional services rendered rather than administrative details that are incidental to the services. Robb v. United States, 80 F.3d 884, 889 (4th Cir. 1996). In Plaintiff's deposition, she reported that the

Agency hired her for particular tasks, gave her assignments, and provided her with direction on how to perform them. She had to submit weekly reports to the Agency about the work that she performed. Plaintiff has not provided any evidence showing that she was under the direct control of any SAIC supervisor in regard to the performance of her professional work. She did provide evidence that she went to an SAIC orientation, filed monthly status reports with SAIC, and received some input from SAIC on her travel, training, and time cards.

The lack of control exercised by SAIC is not dispositive by itself, but numerous other factors weigh in favor of finding that Plaintiff was an independent contractor as well. Plaintiff was a Senior Principal Engineer, a skilled occupation. She worked at an Agency site at an Agency desk with instrumentalities provided by the Agency. In addition, Agency personnel selected what tasks to assign to Plaintiff. The duration of the working relationship could suggest an employment relationship, as Plaintiff worked with SAIC for more than a year. See Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 262 (4th Cir. 1997) (observing that an enduring relationship may suggest continuity inherent in an employment relationship).

In determining employment status, the Fourth Circuit has also examined the beliefs that the parties held about the nature

8

of their relationship. Id. GH Engineering's relationship with SAIC is explicitly defined in their Subcontract Agreement as that of an independent contractor. While Plaintiff was not a signatory to the Subcontract Agreement, the document indicates SAIC's intent to refrain from treating its GH Engineering contractors as employees.

The Fourth Circuit has also held that the failure to "extend employment benefits or to pay any payroll taxes is highly indicative that the employee is an independent contractor." Farlow, 259 F.3d at 315 (quotation marks omitted). The tax and benefit treatment that the individual receives can be "virtual admissions of the party's status." Id. (quotation marks omitted). Here, GH Engineering paid Plaintiff, gave her a raise, and withheld taxes from her pay. Plaintiff's vacation accrued according to a GH Engineering schedule. When she wanted time off, she merely notified SAIC of her plans instead of asking SAIC for approval.

SAIC's lack of control over the manner in which Plaintiff performed her work and the financial relationship between SAIC and Plaintiff evidence the independence that Plaintiff exercised from SAIC in conducting her work. Consequently, Plaintiff was not an employee of SAIC and cannot recover under the ADA and Title I.

Additionally, Plaintiff alleges that Defendant tortiously interfered with her contract or contract expectancy with GH Engineering and the Agency by deactivating her access badge and terminating her clearance to work on the Agency's project. Under Virginia law, the elements of a cause of action for tortious interference with contract are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

Century-21 v. Elder, 391 S.E.2d 296, 298 (Va. 1990) (quoting Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985)). When the employment relationship is at-will, a plaintiff must also prove that the employer used "improper methods" to interfere. Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987). Plaintiff argues that Defendant's deactivation of her Agency-issued identification badge and termination of her clearance to work on the Agency contract tortiously interfered with her relationship with GH Engineering, as well as with any employment expectancy that she may have had with the Agency. However, Plaintiff has failed to establish the elements essential to her tortious interference claims.

Plaintiff must show the existence of a contractual relationship or a reasonable certainty of future contract expectancy with GH Engineering and the Agency. Chaves, 335 S.E.2d at 102. When Plaintiff's access badge and clearance were deactivated on March 3, 2008, Plaintiff continued to have an employment relationship with GH Engineering. However, Plaintiff had been removed from the contract with the Agency on February 29, 2008. She has pointed to no evidence that demonstrates an employment relationship or reasonable expectancy of an employment relationship with the Agency on March 3, 2008.

To prevail on her claim, Plaintiff must also show that Defendant had knowledge of the contract or contract expectancies with GH Engineering and the Agency, id. at 120, as well as knowledge of the fact that Defendant was interfering with the contract or expectancy through its conduct. See Meadow Ltd. P'Ship v. Heritage Sav. & Loan Ass'n, 639 F. Supp. 643, 652 (E.D. Va. 1986). Plaintiff argues that Defendant had the requisite knowledge because Defendant knew GH Engineering still employed Plaintiff on the date that Defendant deactivated her access badge. However, Plaintiff does not offer any evidence showing Defendant's knowledge that deactivating Plaintiff's badge would interfere with Plaintiff's employment relationship with GH Engineering. Plaintiff also fails to explain how SAIC

could possibly have known that deactivating Plaintiff's access badge—that granted her access to the Agency where she no longer worked—could interfere with her employment relationship with GH Engineering. Assuming Plaintiff did actually have a reasonable expectancy of a relationship with the Agency on March 3, 2008, Plaintiff has provided no evidence to show that SAIC knew of any such expectancy between Plaintiff and the Agency when SAIC deactivated her badge. In fact, Mr. Orsini, an SAIC employee, sent an e-mail to a coworker on March 3, 2008 that explicitly stated, "I explained to the badge office this morning that I had not been made aware that [Plaintiff] was supporting another contract and that there may be a risk of [Plaintiff] becoming a disruption onsite . . . ." In short, there is no evidence that Defendant knew that its conduct would interfere in any way with Plaintiff's employment relationship with GH Engineering, nor has Plaintiff offered any evidence that Defendant knew of any future contract expectancy between Plaintiff and the Agency.

Because Plaintiff has failed to make the necessary showing of knowledge, the Court does not need to consider the remaining elements and must grant summary judgment to the Defendant.

An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
February  /o , 2011